GAY *against* HANGER & WINSTON.

ERROR *to Chicot Circuit Court.*

Where the record states that at May Term, 1839, the parties appeared by their attor-
neys, and, on motion of the plaintiff, the plea of non-assumpsit, which had been
lost, was reinstated on the rolls; and that, at November Term, 1839, the plaintiffs
appeared by attorney, and leave was given the defendant, by consent of the plaintiffs,
to withdraw his pleas, these entries show such an appearance of the defendant, that
he can afterwards have no advantage of a defective writ or a defective service.

Though no steps were taken in a cause, from May Term, 1838, to May Term, 1839,
it was not thereby discontinued; and the defendant waived his objection, if there
was any, by permitting his plea to be reinstated at the latter term.

In an action by the assignee of a note against the maker, if the declaration contains
the usual averment, that, before the payment of the note, it was assigned, the pay-
ment to the assignor needs be no further negatived, in the breach at the conclusion
or elsewhere.

This was an action of assumpsit, commenced in Chicot Circuit Court,
at May Term, 1838. The declaration, founded on a note endorsed
to Hanger & Winston, was technically correct, stating the note to
have been assigned before any part of it was paid, but not otherwise
negativing the payment to the assignor, and the writ in due form.
Upon the writ, Gay endorsed an acknowledgment of service. The
first entry on the record is of May Term, 1839. It states that the
parties appeared by attorneys, and that, on motion of the plaintiffs,
and it appearing to the satisfaction of the Court that the pleadings
which had been filed in the case were lost or mislaid, the plea of non-
assumpsit, formerly filed, was reinstated, and the case continued and
reinstated on the docket.

At November Term, 1839, the record states that the plaintiffs ap-
peared by attorney, and leave was given the defendant, by consent
of the plaintiffs, to withdraw his pleas theretofore filed. He being
then called, judgment was entered, *by default, for the amount of the*
note, as damages, with legal interest from January 1, 1838, when it
fell due, until paid.

W. and E. CUMMINS, for the plaintiff:

The plaintiff in error, in the first place, contends, that the declara-
tion of the plaintiffs below is wholly defective and insufficient, in not

averring a sufficient breach.　The declaration states the note to be payable *on or before the first day of January*, 1838, clearly giving the defendant below a right to pay the note to the payee, at any time after the date of the note; and a payment made at any day after the date of the note, would have been a good bar to any action brought on the note subsequently.　But it would have made no difference, if the note had not been payable *on or before* a particular day.　By the statute in force, when the note was executed, any payment made after the date of the note, at any time, would have been a good bar to a subsequent action on the note, into whose hands soever the note might afterwards come.　It would have been a legal payment of the note, and would have released the maker absolutely from all further liability upon the note.　See *Steele & McCampbell's Digest*, *pages* 74, 75, title "*Assignment*," which, we apprehend, was the law in force at the time the above note was executed.　See also the opinion of this Court, in the case of *Small vs. Strong*, 2 *Ark. Rep.*, 201, in which this Court seems to put the construction upon the above statute which we contend for.　The statute above referred to contains the following proviso: "Nothing in this section shall be so construed as to change the nature of any defence in law that any defendant may have against the assignee or the original assignor."　We apprehend that this statute intended to give the maker of any assigned instrument, the right to set up, by proper pleas against the assignee, any accord and satisfaction, payment, or any arrangement for the settlement or discharge of the instrument, made previous to the assignment.　The present case, however, does not require any such construction of the statute.　The plaintiffs themselves show that the defendant below had a right to pay the note at any day after its date; and any payment or other settlement made of the note, would have barred the assignee's action.

The object of the above statute seems to have been, to do away with the rules of the law-merchant, which enables an innocent endorsee, who receives a note before due, to recover of the maker at all events.　We presume an endorsee suing the maker on such endorsement, would make out a prima facie cause of action, (which the plaintiff is always bound to do in his declaration), by averring that the note came to his hands before it was due.　But is not the rule very different,

where the party himself shows, in his declaration, that the defendant had a right to pay the note at any time after date, and the payee had a legal right to receive such payment? or, where the law itself gives the same rights to the parties? Is not a party always presumed to have performed his contract, until the contrary is averred?

The breach in the present case merely alleges that the defendant below did not pay the money to the plaintiffs below, nor either of them, without ever alluding to the assignor of the note, or stating that the note had not been paid to him before the assignment. We apprehend that this assignment of a breach is wholly defective.

*Chitty on Pleading,* page 325, says: " The breach of the contract, being essential to the cause of action, must in all cases be stated in the declaration." Taking the above breach to be true, to its fullest extent, does it show that the defendant below ever did violate his contract? It certainly does not; for any thing that appears, he may have fulfilled his contract, by paying the assignor before the endorsement of the note, which was all he ever contracted to do.

On the page above referred to, *Chitty* goes on to say, that " The breach must obviously be governed by the nature of the stipulation. It should be assigned in the *words of the contract,* either negatively or affirmatively, or *in words which are co-extensive with the import and effect of it.*" Does the above breach comply with the above rule? Most certainly not. The above rule is also laid in 1*st Tidd's Pr.,* 390. See also 1*st Saun. Pl. and Ev.,* 163, where it is said, " The breach must be assigned in terms co-extensive with the contract, and not be too narrow. Thus, in an action by the assignee, heir, or executor, the breach should be, *that the defendant did not perform the act to the original contractor or the plaintiff;* and so if it be against an assignee, &c." The above is directly in point in the present case. Here the assignees sue, and their breach makes no allegation of non-payment to the assignor. At page 326, (1 *Ch. Pl.*) *Chitty* says, " But if the action be by or against an assignee, heir, or executor, the breach should then be in the disjunctive."

The above authorities seem to us conclusive as to the insufficiency of the breach in the declaration in this cause.

In the next place, the plaintiff in error contends that the proceedings

Gay *against* Hanger & Winston.

of the Court below, at the May Term, 1839, are wholly erroneous. From the May Term, 1838, or rather from the filing of the declaration, and issuing the writ, no one step has been taken in the cause up to the May Term, 1839. Suppose the writ had been regularly served on the defendant below, in due time, before the May Term, 1838, could the Court below, after a lapse of two terms, without any steps whatever taken in the cause, or any mention made of the cause for that time, upon the records of the Court, or any appearance of either party, legally take jurisdiction of the case, or consider the cause in Court? We conceive, even if there had been legal service of the writ, the party could only be required to appear according to the exigency of the writ; and if the plaintiff failed, at the return term of the writ, to prosecute his suit, he would unquestionably lose the benefit of his service, and would be under the necessity of instituting a new proceeding. In this case, however, there is no service whatever which can be recognized by this Court. If, then, we are right in the above view of the matter, at the May Term, 1839, the Court below had no jurisdiction whatever over the cause, and could not legally notice or take any steps in the cause, unless the defendant expressly waived the necessity of process or service, and appeared to the action. The record states, that "the parties came by their attorneys." There is confessedly no cause in Court. The defendant does no act whatever; but the plaintiffs, on mere motion, without notice to the defendant, and without his consent, reinstate the cause in Court, and reinstate upon the record the plea of non-assumpsit, which the entry states had been lost. The defendant made no waiver of his rights by his appearance, (if the Court can consider the statement that "the parties came by their attorneys," amounts to an appearance;) for there was nothing to appear to; and his merely being in Court, could not give the Court jurisdiction over him, in a cause of which he was wholly ignorant. He does not appear to the action, nor does he do any one act. The plaintiffs below reinstate the cause, and pleas of the defendant, on the record, without the concurrence of the defendant. We apprehend that under the decisions of this Court, in several cases from Chicot county, recently determined, the above proceedings are wholly erroneous. In the case of *Smith vs. Dudley*, 2 *Ark. Rep.*, 60, this Court

decide, that a record cannot be proved but by the record itself, or by a duly certified transcript; and that where an inferior Court undertakes to reinstate a record, the mode of proving the record before the Court must appear, or this Court will not presume that it was correctly proved. In this case, the plaintiffs below reinstate upon the record, not their cause only, but also a plea of the defendant, which was (if there ever had been one,) a part of the record, and could not be re-instated, without first proving, in the mode pointed out in the above decision, its previous existence. In the case of *Webb vs. Hanger & Winston*, 2 *Ark. Rep.*, 126, this Court say, "It is a settled principle, that unless it appears affirmatively upon the record that the defendant was regularly brought into Court, in accordance with the statutory provisions regulating the mode of bringing actions, or that he consented to proceed without process or notice, the Court could not exercise any jurisdiction over the subject matter." The above language is very broad, and directly applicable to this case. The defendant below, in this case, made no waiver of either process or notice, and never consented to any proceeding of the plaintiffs below. This Court also lay down the same rule in the case of *Clark vs. Grayson*, 2 *Ark. Rep.* 149. The Court, therefore, had no right to reinstate this cause, nor to reinstate the plea of the defendant upon the record, without notice to the defendant, or a waiver of notice by him, unequivocally made; and its doing so is clearly erroneous, and cannot be binding upon the defendant below.

At the fall term of the Court, in 1839, the defendant below did not appear at all. The plaintiffs below very kindly consented, however, that the defendant below might withdraw his pleas previously filed. As no pleas of any kind are copied into the transcript, there are no means of knowing what pleas the above entry alluded to. We presume it alludes only to the plea of non-assumpsit, which the plaintiff had reinstated upon the record at the previous term, as there is no mention made of any other plea previous to the above entry in the record. The record does not show that the pleas mentioned were withdrawn, or what disposition was made of them. Immediately after the entry of consent of plaintiffs to defendant to withdraw the pleas,

Gay *against* Hanger & Winston.

the Court give judgment by default against the defendant. This judgment is wholly erroneous.

In the first place, the record shows that there were pleas upon the files of the Court; and although the plaintiffs consent to their being withdrawn, yet there is no statement showing that they were withdrawn; and, in all probability, the plaintiffs were themselves guilty of laches in not taking issue on those pleas; and the defendant may not have been under any obligation, even supposing him to be in Court, to take any further steps in the cause until the plaintiffs had responded to the pleas filed. The question is, whether, while those pleas were standing upon the record, undisposed of, the plaintiffs below had any right to judgment by *nil dicit*, or default? The plea of *non assumpsit*, which seems to have been one of the pleas on the record, must have concluded to the country, and left nothing wanting to a complete issue, but the *similiter* of the plaintiffs. In the case of *Wooster vs. Clark*, 2 *Ark. Rep.*, 101, the Court decide that where a defendant failed to file a *similiter* to a replication, concluding to the country, and thus refused to make up an issue, the plaintiff had no right to a judgment by *nil dicit*. This is a much stronger case than the one just cited. Here the defendant had done every thing which he was bound to do, to make up an issue; and if no issue was formed, it was the fault of the plaintiffs, and by their neglect they could not deprive the defendant of his right to have a trial upon the plea. The Court further decided in the case last cited, that the plaintiff is bound to proceed to a trial of the issues upon the record, and cannot overlook them, and take judgment by *nil dicit*. This decision is conclusive in the present case. The plaintiffs below should have had a trial upon the pleas, before taking judgment.

In the next place, the plaintiffs below had no right to a judgment by *default*, under any circumstances. There never had been any service of the writ in the cause, which the Court could recognize. In the case above cited, of *Webb vs. Hanger & Winston*, 2 *Ark. Rep.*, 126, this Court say, that it must affirmatively appear upon the record that the defendant must have been regularly brought into Court, according to the provisions of the statutes regulating the mode of bringing actions, or that he consented to proceed without process or notice.

Under this decision, the pretended acknowledgment of service of the writ could not be recognized by the Court, unless the defendant had afterwards in Court appeared, and waived service. This the defendant did not do. The plaintiffs lost the benefit of the acknowledgment of service of the writ by defendant, by not proceeding in the suit for two terms after the writ, if it had ever been of any avail. There was then no service of any writ upon the defendant, which compelled him to appear at the time when judgment was given; and there being no obligation upon him to appear, there was not, nor could there be, any default in not appearing, nor could he lose any right by failing to appear. See *Gilbreath vs. Kuykendall*, 1 *Ark. Rep.*, 50. The Court, in this decision, say, " The defendant's right to insist upon a valid writ, and a legal service thereof upon him, before he was bound to appear, or subject to the legal consequences of a default for not appearing, *unless waived by himself, must be admitted.* No such waiver, either in fact or in law, expressed or implied, is shown by the record, and *none can be presumed.*" In this case, there is no pretence of service of the writ, nor any waiver of defendant. By what right, then, could the plaintiffs below claim a judgment by default? But according to the statement of the record, defendant was not in default, for he had pleas on file, undisposed of. See *Moore vs. Watkins and others*, 1 *Ark. Rep.*, 268.

PIKE, *Contra:*

Although the acknowledgment of service was invalid, the record shows a sufficient appearance of Gay. The record shows that he had before filed a plea; that the plea being reinstated, he came and moved for leave to withdraw it. Much less than this would compel this Court to consider that he had fully appeared.

There is very high authority for the position, that a Court of general jurisdiction is not bound to show expressly on the record, that there was service of process, or an appearance; and that, if nothing of the kind appears on the record, it will be intended, in a superior Court.

Thus, in *Peacock vs. Bell*, 1 *Saund.*, 73, which was error from a judgment in assumpsit of the Court of the county Palatine of Durham, whose jurisdiction was of such promises only as were made within the

Gay *against* Hanger & Winston.

limits of the county, the declaration did not aver that the goods, on sale of which the promise was made, were sold within the county; and so it was alleged for error, that it did not appear but that the goods might have been sold in another place. It was agreed that many judgments from *inferior* Courts were daily reversed for that cause. But the Judges first went on to show, that in respect to the Palatine Court, questions of jurisdiction stood on the same footing as they would on error from a *superior* Court. They then add, that the rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a *superior* Court, but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an *inferior* Court, but that which is expressly so alleged; and though the Court of the county Palatine is inferior to the Court of King's Bench, yet that does not prove it to be an *inferior* Court, in the sense *that it ought to certify every thing precisely;* for the Common Bench is inferior to this Court, but yet it is an original and superior Court, of which the law itself takes notice, and so is the Court of the county Palatine; and, consequently, the omission in the declaration is no error, because it shall be intended that the contract was made within the jurisdiction, if it shall not appear to the contrary.

True, this was a question of local jurisdiction, but that only makes it the stronger; for it is a case of much more difficult intendment than the regular service of process. And even the lowest Court is never required to show expressly that its process has been served, not even where *it proceeds in a criminal matter.*

In *Rex vs. Venables,* 1 *Str.,* 630, which was a certiorari from a criminal conviction by justices, it was moved to quash it on the return, for want of showing a summons or appearance of the defendant. "*Sed per curiam.* We will not presume they acted unlawfully: a summons is certainly necessary; and the justice is punishable if he proceeds without. You never show notice to the parish that is to be charged in orders of removal." In the same case, in 2 *Ld. Raym.,* 1405, the Court said, that it not appearing by the order that there was no summons, they *would intend the justices having jurisdiction, proceeded regularly.*

In *Rex vs. Cleg.,* 1 *Str.,* 575, EYRE, J., said, "*It not appearing* this

Gay *against* Hanger & Winston.

order was made *in the absence of the party*, I think we must take it to be a regular proceeding." And so it was held in the case of *The King vs. Peckham, Carth.* 406. The Court said, where a summons was necessary, they would presume there was one, unless the contrary appeared; *for all jurisdictions are presumed prima facie to act according to law.*" FORTESCUE, J., said: "It is certain that natural justice requires that no man shall be condemned without notice; *for which* reason, I think the order will be good, *because it does not appear to us that he had no notice.* Are we to suppose *the sessions have proceeded contrary to right and justice,* and that, too, in a case where they have undoubted jurisdiction? In the case of servants' wages, the jurisdiction is given only in husbandry; and yet, orders have been held good where it did not appear the service was in husbandry; for the Court said they would intend it so, unless the contrary appeared." *Salk.*, 442. The Chief Justice at first doubted; but at the next term, it was moved and confirmed, without opposition.

Mr. NARES remarks, that " wherever a summons is necessary, the Court presumes one, unless the contrary appears; for all jurisdictions are presumed to act *prima facie* according to law." *Nares on Penal Conv.*, 10, cited 21 *Wend.*, 47. Mr. NOLAN remarks, "It is usual and proper to state that the defendant was summoned, and that he either appeared in consequence thereof, or neglected to do so. But it is not in strictness necessary that this should be averred on the face of the proceeding, as the Court will intend that it was, unless the contrary appear." 2 *Nol. Poor L.*, 269, cited 21 *Wend.*, 48. See *Com. vs. Moore*, 3 *Pick.*, 194.

In *Rex vs. Clayton*, 3 *East.*, 61, Lord ELLENBOROUGH said: "The law has been settled by so strong a series of decisions, from the time of Lord HOLT down to a very recent period, that every intendment shall be made in favor of an order of justices, that we must see whether, by any intendment that can be made, the present order can be supported."

In *Brown vs. Wood*, 17 *Mass.*, 68, speaking of an objection to the probate of a will, JACKSON, J., said: " Upon the common presumption in favor of every judicial tribunal acting within its jurisdiction, we must suppose that all persons concerned had due notice."

Gay *against* Hanger & Winston.

In *Hart vs. Seixas*, 21 *Wend.*, 40, these authorities were all reviewed, and the Supreme Court of New-York held that it was not error, though neither service of process nor appearance was stated in the record of a Court of general jurisdiction. The Court said that they were asked to withhold from the Common Pleas of New-York, a Court of general jurisdiction, that favorable intendment, on a return to a writ of error, which Westminster Hall accords to the most humble and limited branches of the English Police. COWEN, J., said: " I do not understand it to be denied that the records of that Court are entitled to the same favorable interpretation with our own, nor that every intendment in favor of official, moral, and prudential accuracy, honesty, and care, is due to them, which would be applied to the Courts of Westminster Hall, or to this Court. Why, then, are we asked to withdraw from the Superior Courts the maxim which we extend even to all the graver transactions of private life—*Omnia præsumuntur legitime facta, donec probetur in contrarium?* Co. *Litt.*, 232, *b*. Has history shown their general corruption, and stamped them with suspicion? That is not pretended. Is there any authority in this or any other Common Law Court, against such intendment? I have found none. None was cited by counsel on the argument; none has been found by either of my learned brethren; and I am therefore bold to say that none can be found. I inquired for an authority a full term and vacation since, and all research has been vain." Again, he said, that the proper course for the defendant, if not properly served with process, was to move to set aside the proceedings for irregularity. " Why," said he, "did the defendants below lie by, and bring error? If they had not been regularly served, did they doubt the Common Pleas would set aside the proceedings?" In *Mellish vs. Richardson*, 9 *Bing.*, 125, all the Judges of England laid it down that the proper object of a writ of error is to remove the final judgment, with the premises, which are, " the pleadings between the parties; the proper continuance of the writ and process; the finding of the jury upon an issue in fact, if any such has been joined; and, lastly, the judgment of the inferior Court." They do not mention the writ, or any memorandum on the record of service of process, or appearance.

Certainly it is more consistent with justice, as well as more proper, considering what is due to the Circuit Courts, that a party, if he has not been regularly served with process, should first apply there for relief. It would be intolerable if any fomenter of suits should mouse about among the old records of this country, and bring up here for reveral every case in which the record failed to show regular service of process, or any appearance. Great injustice would be done to the Courts below, and the jurisdiction of this august tribunal grossly misused, contrary to the most obvious dictates of justice and equity. It is unnecessary to say, that it is not intended, by the slightest allusion, to insinuate that this writ of error has thus proceeded. But clearly such a course might be practised. And while the party can have ample relief below, if he makes no application there, but lies by, and then comes here upon such grounds, every intendment which can legally be made in favor of the Court below, should be entertained. Cases brought up like this, show no error in law committed by the Court; and ask this Court to settle no question of interest or importance, but tend only to vex and disturb the Court with applications for redress, which should properly have been made to the original tribunal.

In *Foot & Beebe vs. Stephens,* 17 *Wend.,* 483, the Supreme Court of New-York first went on to declare the Courts of Common Pleas to be Courts of general jurisdiction. They said that the power of these Courts was, to hear, try, and determine, according to law, all actions local to the county in which they sat, and all transitory actions, wherever the cause might arise. They went on to discuss this matter at length, and showed, conclusively, that a Court, with the jurisdiction and powers of our Circuit Courts, was a Court of general jurisdiction. They then quoted and affirmed the rule laid down by *Clinton,* Senator, in *Yates vs. Lansing,* 9 *J. R.,* 437, that "an inferior Court shall, when questioned, show that it acted within its jurisdiction; whereas, in Courts of general jurisdiction, it is presumed, until the contrary appear." And the remarks of *Savage, C. J.,* in *Wheeler vs. Raymond,* 8 *Cowen,* 314, that, with respect to Courts of general jurisdiction, averments of the facts on which the jurisdiction is founded, are unnecessary. So the declaration of *Marcy, J.,* in *Shumway vs. Stillman,* 6 *Wend.,* 453, that the judgment of such a Court, though a foreign one, is conclusive,

unless it appears, by the record, that the defendant was not served with process, and did not appear in person, or by attorney, or these facts be shown by proof *aliunde.*

So the remark of *Sutherland, J.,* in the same case, 'that " every presumption is in favor of the jurisdiction of the Court." The Court then, among other things, remarked: "It is unreasonable, and contrary to presumption, to suppose a judgment recorded by a Court in all its important forms, without the usual notice." Parties, judges, and every participant, would become tresspassers, they say, by enforcing a judgment obtained without notice, and even an action would not lie upon it. And all this is based upon the presumption, that attorneys, and all concerned, have proceeded headlong to a judgment, without notice.

Were it not for the very explicit declaration of this Court, that the writ is a part of the record brought up on error, we should be much inclined to doubt that position. The case of *Mellish vs. Richardson,* expressly rejects any such conclusion; and it is sustained by cases on this side of the Atlantic. *McFarland vs. Townsend,* 17 *Wend.,* 440, was a case where an action was commenced by a writ of nuisance, and a declaration afterwards filed in case. The defendant copied the writ into the demurrer book, and, among other grounds of demurrer, assigned a variance between the writ and the declaration. The Court held, that, since the practice has prevailed of not setting out the writ in the declaration, the only way in which the defendant could take advantage of a bad original, or a variance between the writ and Court, was by praying oyer, and setting out the writ. The defendant there had not done so: and the Court said, that nothing was judicially before them but a declaration, appearance, and demurrer. They further expressly declared, that, in no case could the defendant crave oyer of the writ, for the purpose of demurring, or pleading a variance in abatement: and, if oyer is demanded, the plaintiff may disregard it, and proceed to judgment. "The Courts," said they, "have, for a long time, refused to grant oyer of the writ; and have, also, refused to set aside the proceedings on motion for a variance between the original and the declaration. If an attempt were made to reach the objection on a writ of error, by alleging diminution, and praying *a certiorari* to bring up the writ, the defect would be cured, after verdict, by the

statute of amendments.  In other cases, the writ of error would be defeated by allowing the original to be amended, or permitting a new one to be filed.  In short, there is no longer any form in which the defendant can take advantage of a variance between the original writ and the declaration, except in cases where he has been arrested and held to bail."  See, also, *Rogers vs. Rogers*, 4 *R.*, 485; *Hole vs. Finch*, 2 *Wil.*, 393; 1 *Saund.*, 318, *n.* 3; 1 *Ch. Pl.*, 438–9; *Stephen*, 69, 421, 425; *Ball vs. Bank of Utica*, 6 *Cowen*, 70.

But whatever may be the opinion as to the decision in New-York, we think it clear, as well as just, as laid down in the case first quoted, that, if the record virtually shows that the defendant appeared, and if the fact of appearance can, with no very violent effort of presumption, be intended upon the record, the judgment should be supported.  If an *imparlance*, and a default, show an appearance, as was held in *Hart vs. Seixas*, certainly an application by the defendant for leave to withdraw pleas, which the record shows that he had filed, clearly proves that he has no right to complain here, that he had no opportunity to be heard.  Taking the whole record here together, we do not see with what show of propriety the defendant below can allege that he had no knowledge of the proceeding below.

The objection to the breach is invalid, and if good on demurrer, it was cured by pleading over.

No objection was taken below to re-instating the plea.  The case, itself, never was re-instated; nor does it appear ever to have been off the docket.

LACY, J., delivered the opinion of the Court:

At the May term, 1839, the record states, that the parties to this suit appeared, by their attorneys, and, "on motion of the plaintiff, it appearing to the satisfaction of the Court, that the pleadings which had heretofore been filed in the case, had been lost or mislaid, thereupon the plea of non assumpsit was re-instated."  The case was then continued.  At the November term, 1839, the record further shows, that the plaintiffs appeared, by attorney, and leave was given the defendant, by consent of the plaintiffs, to withdraw his pleas, and judgment was thereupon entered by default.  These entries, unquestiona-

Gay *against* Hanger & Winston.

bly, prove a voluntary appearance on the part of the defendant, first, by filing his plea, and, afterwards, by withdrawing it. He can, therefore, take no advantage, either of a defective writ, or of a defective service. But it is said, that, as there were no steps taken in the cause from May term, 1838, to May term, 1839, the cause was, by operation of law, discontinued and out of Court. This position we deem not at all tenable. Upon the plaintiff's motion, at the May term, 1839, the defendant's plea, before put in, which had been either lost or mislaid, was re-instated by the Court, upon the rolls. To this re-instatement the defendant did not object. His failure to do so precludes him from excepting to the opinion of the Court below, upon this point. Leave was afterwards granted him, by consent of the plaintiffs, to withdraw his plea.

The only remaining inquiry now is, was the judgment by default properly rendered? This is an action of assumpsit upon a promissory note, assigned by Pendleton Hill to the plaintiffs below. The only objection taken to the declaration is, that it contains no breach that the money was not paid to the assignor before assignment. The breach, we think, contains a sufficient allegation. It alleges, "that, before the payment of said promissory note, it was assigned by Hill to the plaintiffs." This is, certainly, a good and sufficient averment, and substantially conforms to approved precedents. The party was bound to pay, before the assignment, to no one but Hill; and if the note was assigned before payment, it unquestionably negatives the supposition that the money was paid to the assignor. The judgment of the Circuit Court must, therefore, be affirmed, with cost.